UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORIDA MAE WYNNE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,<br><br>　　　　Defendant. | CASE NO. 1:13-cv-961 GSA<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

**INTRODUCTION**

Plaintiff Florida Wynne ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits under Title II of the Social Security Act and for Supplemental Security Income payments under Title XVI of the Social Security Act. The matter is pending before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

**SUMMARY OF THE ADMINISTRATIVE PROCEEDINGS**

On March 15, 2010, Plaintiff filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income benefits, both alleging disability

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

[2] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 6 & 9.

beginning on February 6, 2010. AR 190-207.  Her claims were denied initially on September 16, 2010, and upon reconsideration on December 15, 2010.  AR 79-114.  On December 5, 2011, an administrative law judge ("ALJ") conducted a hearing on Plaintiff's claim.  AR 37. Plaintiff was represented by an attorney and testified at the hearing. AR 37-78.  A vocational expert also appeared and testified.  AR 37-78.  On February 13, 2012, the ALJ found that Plaintiff was not disabled.  AR 20-36.  Subsequently, on April 23, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 3-6.  Plaintiff then commenced this action in District Court. Doc. 1.

In evaluating a claimant's disability the ALJ is required to undertake a sequential five-step analysis to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments; (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 CFR § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC")[3] to perform his past relevant work; and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level.  20 CFR §§ 404.1520(a)-(f), 416.920(4).

In her written decision regarding Plaintiff's application for social security benefits, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since the application date. AR 25. Next, she found that Plaintiff had the following severe impairments: anemia, obesity, hypertension, headaches, borderline intellectual functioning, and depression. AR 25. At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled the severity of one of the listed impairments in 20 CFR § 404, Subpart P, Appendix 1. AR 26. The ALJ then assessed that Plaintiff had the RFC to lift and carry twenty pounds occasionally and ten pounds frequently, to stand and/or walk for six hours in an eight-hour day, and to perform simple repetitive tasks. AR 27-30. At step four, the ALJ found that Plaintiff was unable to perform any

---

[3] Residual functional capacity captures what a claimant "can still do despite [his] limitations."  20 CFR § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

past relevant work. AR 30. At step five, the ALJ found that, considering her residual functional capacity, along with her age, education, and work experience, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 30.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

**DISCUSSION**

I. The ALJ Provided Specific, Clear and Convincing Reasons Supported by Substantial Evidence in the Record for Discounting Plaintiff's Credibility

Plaintiff testified at the hearing that she has headaches and backaches, which she speculates are related to rapid weight gain of about sixty pounds over the latter half of 2010.[4] AR 46, 47, 50. Plaintiff testified that her headaches are ongoing and throbbing. AR 48. The back pain is sharp and stabbing. AR 49. Plaintiff testified that her back aches when sitting for long periods of time, the pain worsens when lying down, and her back hurts after walking for five to ten minutes. AR 49-50. She gets a sharp pain in her back when she lifts her grandchild who weighs about fifteen to twenty pounds. Other than ibuprofen for headaches, Plaintiff was not taking pain medications at the time of the hearing. AR 48, 56. Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective complaints, and that her credibility assessment was not supported by substantial evidence. Doc. 15 at 16: 8-19.

---

[4] In June 2010, Plaintiff weighed 200lbs. AR 486. In January 2011, Plaintiff weighed 255lbs. AR 478. At the hearing in December 2011, she testified that she weighed 260 lbs. AR 44. Plaintiff attributes the weight gain to the Depo Provera shot she received in order to reduce vaginal bleeding in June 2010. AR 46.

In evaluating the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that the impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id*. If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id*.

Regarding credibility determinations by an ALJ, the Ninth Circuit has held as follows:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1226–27 (9th Cir.2009); 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling ("SSR") 96-7p, available at 1996 SSR LEXIS 4. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ properly discounts credibility if he makes specific credibility findings that are properly supported by the record and sufficiently specific to assure a reviewing court that he did not "arbitrarily discredit" the testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); SSR 96-7p, available at 1996 SSR LEXIS 4 (The ALJ's findings must be sufficiently specific to make clear to the claimant and to any reviewing court the weight the ALJ gave to the individual's statements and the reasons for that

weight).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment. AR 28-29. The ALJ gave several specific, clear, and convincing reasons to discount Plaintiff's credibility regarding her statements concerning the intensity, persistence, and limiting effects of her symptoms.

First, the ALJ discussed Plaintiff's failure to seek and follow treatment. The ALJ noted that in January 2011, Plaintiff complained of pain that was "worse than childbirth" and rated the intensity level at ten on a scale of one to ten. AR 29, 478. However, even though after the hearing Plaintiff's attorney submitted medical records for the period through December 16, 2011, there are no medical records demonstrating follow-up treatment for this alleged extreme pain. AR 29, 76-77, 476-527. An ALJ may discount a claimant's symptom testimony where the claimant describes severe and disabling symptoms but has sought or received only minimal or conservative treatment for his or her complaints. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). "[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7p. The ALJ's reliance on the inconsistency between Plaintiff's complaints and her treatment record counts as a clear and convincing reason, supported by substantial evidence in the record, for rejecting Plaintiff's subjective symptom testimony.

Further, the ALJ discussed Plaintiff's work history; specifically, that she was laid off a few months prior to the alleged disability onset date. An ALJ may consider a claimant's work history in assessing credibility, including the fact that she was laid off. 20 C.F.R. §416.929; *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (affirming adverse credibility finding because claimant stopped working when laid off, not when injured). The ALJ considered Plaintiff's testimony that she was laid off in December 2009 because she was "no longer needed" in relation to her alleged disability onset date of February 6, 2010. AR 29, 45, 225. The ALJ reasonably concluded that Plaintiff's work history negatively affected her credibility. Consequently,

5

1  Plaintiff's work history is a clear and convincing reason, supported by substantial evidence in the
2  record, to discount Plaintiff's subjective symptom testimony.

3  Next, the ALJ discussed Plaintiff's daily activities. The ALJ stated that "[Plaintiff] has
4  described daily activities, which are not limited to the extent one would expect given the
5  complaints of disabling symptoms and limitations." AR 28. In assessing a claimant's credibility,
6  an ALJ may consider whether the claimant's statements are consistent with the individual's daily
7  activities. *See, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (claimant's "ability to
8  perform various household chores such as cooking, laundry, washing dishes and shopping,"
9  among other factors, bolstered "the ALJ's negative conclusions about [her] veracity"); *Molina v.*
10 *Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[e]ven where [the daily] activities suggest some
11 difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent
12 that they contradict claims of a totally debilitating impairment"); *Orn v. Astrue*, 495 F.3d 625, 639
13 (2007) (claimant's daily activities that contradict claimant's other testimony vitiate claimant's
14 credibility); SSR 97-6p. Here, the ALJ noted Plaintiff's report that she lives alone, prepares simple
15 meals, does household chores, reads, shops a few hours a month, visits friends and family, and
16 attends religious services. AR 28, AR 278-284. Plaintiff's daughter's report and Plaintiff's
17 testimony at the hearing further confirmed that Plaintiff engages in these activities. AR 28, 52-55,
18 270-277. Plaintiff also testified at the hearing that she walks five to ten minutes from her home to
19 a store where she pays her bills. AR 50, 54. Based on Plaintiff's testimony, it was reasonable for
20 the ALJ to conclude that her daily activities were inconsistent with her complaints of disabling
21 symptoms and limitations. Hence, the ALJ's reliance on the inconsistency between Plaintiff's
22 complaints and her daily activities counts as a clear and convincing reason, supported by
23 substantial evidence in the record, for rejecting Plaintiff's subjective symptom testimony.

24 In sum, the ALJ cited specific, clear and convincing reasons, based on permissible grounds
25 and supported by the record as a whole, for rejecting Plaintiff's subjective complaints regarding
26 the intensity, duration, and limiting effects of her symptoms.[5] *See Batson v. Comm'r of Soc. Sec.*

---

[5] The Court is not persuaded by the ALJ's conclusion that the record generally suggests that the claimant was seeing physicians primarily to generate evidence for her social security application (rather than making a genuine attempt to obtain relief for ailments), which the ALJ cited as a reason for discounting Plaintiff's testimony regarding her

1  *Admin.*, 359 F.3d 1190, 1196–97 (9th Cir. 2004); *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir.
2  2002). Plaintiff posits alternative interpretations of the evidence, but the court may not second
3  guess ALJ findings that are sufficiently specific and supported by substantial evidence.
4  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). As such, the ALJ's credibility
5  determination will not be disturbed.

   II.   The ALJ Properly Considered Plaintiff's Obesity

    The ALJ considered the fact that Plaintiff's weight ranged from 192 to 255 pounds and
found that obesity was one of her severe impairments. AR 25, 29. Plaintiff argues that the ALJ
committed legal error in not properly assessing the impact of obesity on her functional abilities.
Doc. 15 at 7:26-27; Doc. 17 at 3:7-8. The ALJ relied on the functional capacity assessment by
consultative examiner Dr. James Nowlan, M.D., who found no significant limitations in June
2010. AR 29, 30, 416. Plaintiff argues that Dr. Nowlan's assessment was "obsolete" because
Plaintiff gained 55 pounds in the six months following his assessment. Doc. 15 at 8:9-12.

    An ALJ is required to consider an individual's obesity at steps two through five of the
sequential disability evaluation. SSR 02-1p, 2002 SSR LEXIS 1. Moreover, obesity must be
considered in combination with the individual's other impairments. *Id*. SSR 02-1p directs that
"[the ALJ] will not make assumptions about the severity or functional effects of obesity combined
with other impairments." *Id*. Rather, "[the ALJ] will evaluate each case based on the information
in the case record." *Id*. When the record does not contain evidence of functional limitations due to
obesity or indicate that obesity exacerbated other impairments, the ALJ is not required to consider
obesity in combination with other impairments. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir.
2005); *see also Garcia v. Comm'r of SSA*, 498 Fed. Appx. 710, 712 (9th Cir. 2012) (the ALJ's
finding that obesity did not impact the RFC was proper where the Plaintiff "did not provide any
evidence of functional limitations due to obesity which would have impacted the ALJ's analysis")

---

subjective complaints. *See* AR 29. Nonetheless, the ALJ cited a number of specific, clear and convincing reasons for discounting Plaintiff's subjective complaints, and her credibility determination is therefore proper. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008) (the inclusion of improper reasons does not negate an overall adverse credibility determination); *Kibble v. Comm'r Soc. Sec. Admin.*, 2014 WL 4290790 at *1 (9th Cir. Sept. 2, 2014).

(internal quotation marks omitted); *Hoffman v. Astrue*, 266 Fed. Appx. 623, 625 (9th Cir. 2008) ("The ALJ's failure to consider Hoffman's obesity in relation to his RFC was proper because Hoffman failed to show how his obesity in combination with another impairment increased the severity of his limitations.").

Here, the ALJ found Plaintiff's obesity to be a severe impairment. AR 25, 29. She also expressly considered Plaintiff's weight, including the 55-pound weight gain referenced by the Plaintiff, in her RFC analysis. AR 29. The ALJ specifically noted that no doctor had imposed any limitations due to Plaintiff's weight. AR 29. Moreover, because the record did not reflect any functional limitations on account of Plaintiff's obesity, the ALJ was not required to consider obesity in combination with other impairments. Plaintiff suggests that the medical evidence "associated her musculoskeletal back pain with her obesity," (Doc. 17 at 2:15-16), but this proposition is not supported by the record. The progress note cited by Plaintiff indicates both back pain and weight gain but not any correlation between the two. AR 478. On the contrary, the note indicates that Plaintiff's weight gain occurred over the previous 6-7 month period but that her back pain had come on suddenly over the previous two days. AR 478.

In sum, the medical record does not indicate any functional limitations as a result of Plaintiff's obesity, nor does it suggest that her obesity exacerbated any other impairment. The ALJ was not required to speculate as to how Plaintiff's obesity may have affected other impairments. Hence, the ALJ's consideration of obesity was without legal error and supported by substantial evidence.

III.    The ALJ Properly Considered Plaintiff's Mental Impairment

In evaluating the "B" criteria based on the psychiatric review technique form, the ALJ noted that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. AR 27. Plaintiff argues that the ALJ did not address these moderate difficulties in assessing her RFC. Doc. 15 at 8: 23-24.

Contrary to the Plaintiff's argument, the ALJ considered Plaintiff's mental functioning in determining her RFC. The ALJ noted that the State Agency medical consultants concluded that Plaintiff had no severe mental impairments. AR 29. The ALJ cited the psychiatric review

8

1  technique form prepared by the state agency medical consultants, which indicated that plaintiff
2  had no limitations in two of the four functional areas assessed, and only mild limitations in the
3  other two functional areas. AR 29, 465. The ALJ gave that opinion "little weight." AR 29.
4  Although the state agency medical consultants had found Plaintiff to have only mild difficulties in
5  maintaining concentration, persistence, or pace, the ALJ found that Plaintiff had moderate
6  difficulties in this functional area. AR 29, 465.

7  The ALJ gave "great weight" to the opinion of consultative examiner Dr. Steven Swanson,
8  Ph.D., who found that Plaintiff could maintain concentration and relate appropriately to others in a
9  job setting. AR 30, 427. Nevertheless, because the ALJ found that Plaintiff had moderate mental
10 limitations, she limited her RFC to simple, repetitive tasks. Plaintiff does not point to any
11 evidence that contradicts the RFC assessment or suggests that further limitations should have been
12 assessed. Here the ALJ's RFC assessment is consistent with the restrictions identified in the
13 medical evidence; accordingly it is without legal error and supported by substantial evidence. *See*
14 *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of a
15 claimant adequately captures restrictions related to concentration, persistence, or pace where the
16 assessment is consistent with restrictions identified in the medical testimony."); *also see Sabin v.*
17 *Astrue*, 337 Fed. Appx. 617, 620-621 (9th Cir. 2009) (limitation to simple and repetitive tasks
18 adequately encompassed moderate limitations in concentration, persistence or pace); *Hopkins v.*
19 *Colvin*, 2014 U.S. Dist. LEXIS 92251, 2014 WL 3093614 at *15 (E.D. Cal. July 7, 2014)
20 ("Plaintiff's [moderate] limitations with concentration, persistence and pace were addressed with
21 the limitation to simple, repetitive tasks in the RFC."); *Stanley v. Astrue*, 2010 U.S. Dist. LEXIS
22 130755, at *16, 2010 WL 4942818 (E.D.Cal. Nov. 30, 2010) ("in limiting Plaintiff to simple,
23 repetitive tasks, the ALJ properly incorporated in his RFC finding [the physician's] opinion that
24 Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace").
25 ///
26 ///
27 ///
28 ///

IV. <u>The ALJ Properly Found that Plaintiff did not Meet the Listing for Chronic Anemia</u>

Plaintiff argues that the ALJ erred in finding that Plaintiff's anemia did not meet or equal the chronic anemia listing, Listing 7.02. Doc. 15 at 9:9-10. Plaintiff cites to the medical record, which indicates that Plaintiff had severe anemia in early 2009 and early 2010. Doc. 15 at 9:22-26; AR 300, 341-410, 540. Here, Plaintiff's alleged disability onset date for purposes of the instant benefits' applications is February 6, 2010, and Plaintiff does not acknowledge that the medical evidence indicates that her anemia was resolved later in 2010. AR 481. Listing 7.02 defines chronic anemia as "hematocrit persisting at 30 percent or less" with either (A) "Requirement of one or more blood transfusions on an average of at least once every 2 months; or (B) Evaluation of the resulting impairment under criteria for the affected body system." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 7.02. Although Plaintiff complained of heavy bleeding and anemia during the early months of 2010, and the ALJ found that anemia was a severe impairment, the record does not demonstrate that her condition met or equaled Listing 7.02. AR 481, 484, 486, 502, 503, 620.

In February 2010, Plaintiff was hospitalized for severe anemia. AR 300. Her hematocrit levels were very low. AR 402. She underwent successful bilateral selective uterine artery embolization and removal of a fibroid tumor. AR 319, 620. Follow-up lab results indicated "no more bleeding." AR 620. From May through October 2010 Plaintiff continued to be seen by her treating physician for anemia and bleeding. AR 484, 487, 488, 502. However, in May and August 2010, and January 2011, Plaintiff's hematocrit levels were found above the level specified in Listing 7.02. AR 447, 450, 511, 563, 573, 603. In June 2010, a consultative examiner conducted an internal medicine evaluation; he noted that Plaintiff complained of vaginal bleeding but did not diagnose her with anemia. AR 413-416. His opinion was considered by the ALJ. AR 29-30. Also, in October 2010, Plaintiff's treating physician noted that her anemia was resolved. AR 481. Indeed, the medical record reveals that Plaintiff was not treated for anemia after October 2010. *See* AR 478-599. Plaintiff also argues that her doctors repeatedly recommended blood transfusions, but she refused them on account of her religious beliefs. Doc. 15 at 9:25-26. However, the record does not reflect physician recommendations for blood transfusions following Plaintiff's

10

hospitalization in February 2010.

At step three of the sequential evaluation process, the ALJ must determine whether a claimant's impairment or combination of impairments meets or equals a listed impairment set out in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The claimant bears the burden of proving he has an impairment that meets or equals a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). To *meet* a listed impairment, the claimant must establish that he satisfies each element of the listed impairment in question. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett*, 180 F.3d at 1099. To *equal* a listed impairment, the claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment. *Tackett*, 180 F.3d at 1099 (*quoting* 20 C.F.R. § 404.1526). The ALJ is not required to call a medical expert to testify as to whether a claimant's impairment meets a listing, when the ALJ's determination that the impairment is not equivalent to any listing is supported by substantial evidence. *Castaneda v. Astrue*, 344 Fed. Appx. 396, 398 (9th Cir. 2009); *Crane v. Barnhart*, 224 Fed. Appx. 574, 578 (9th Cir. 2007) ("The signed written opinion of the state agency physician was a sufficient basis for the ALJ's equivalence determination, and the live testimony of a medical expert was not required.").

Here, the ALJ's finding that Plaintiff does not have an impairment that meets or equals the listed impairment for chronic anemia is supported by substantial evidence in the record. The evidence is neither ambiguous nor inadequate, such that testimony from a medical expert would be required. Whereas Plaintiff was hospitalized with very low hematocrit levels in February 2010, by May 2010 her hematocrit levels had improved to above the level designated by the listing, and remained above listing-level through at least January 2011. AR 402, 447, 450, 511, 563, 573, 603. There is no evidence in the record indicating that Plaintiff required blood transfusions after being discharged from her hospital stay in February 2010. The consultative examiner did not diagnose Plaintiff with anemia in June 2010. AR 413-416. Plaintiff's treating physician noted that her anemia was resolved and Plaintiff was no longer treated for anemia after October 2010. AR 481.

Plaintiff has failed to demonstrate that her anemia met the elements of Listing 7.02 for chronic anemia or that her symptoms equaled the characteristics of chronic anemia. The medical

11

record shows that Plaintiff's hematocrit level did not persist below 30 percent after May 2010; moreover she did not require blood transfusions at least once every two months. Therefore, the ALJ's finding that Plaintiff did not meet or equal the listing for chronic anemia is without legal error and is supported by substantial evidence.

**CONCLUSION**

For the forgoing reasons, the Court finds that the ALJ's decision is free of legal error and is supported by substantial evidence in the record as whole. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Acting Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, and against Plaintiff Florida Wynne.

IT IS SO ORDERED.

Dated: **February 17, 2015**      **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE